REGIONAL TRANSPORTATION
DISTRICT, Petitioner,

v.

Janet F. VOSS, Evelyn Stephenson, Arthur Waldinger, and Arthur Waldinger, P.C., Respondents.

No. 93SC591.

Supreme Court of Colorado,
En Banc.

Feb. 21, 1995.

Rolf G. Asphaug, Deputy Gen. Counsel, Roger C. Kane, Associate Gen. Counsel, Denver, for petitioner Regional Transp. Dist.

Moss, Morris & O'Dell, P.C., Edward C. Moss, Anne H. Pierson, Englewood, for respondents Janet F. Voss and Evelyn Stephenson.

Hall & Evans, L.L.C., Alan Epstein, Denver, for respondents Arthur Waldinger and Arthur Waldinger, P.C.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Simon P. Lipstein, Asst. Atty. Gen., Denver, for amicus curiae State of Colo.

Griffiths & Tanoue, P.C., Tami A. Tanoue, Denver, for amici curiae Colorado Inter–Governmental Risk Sharing Agency and Colorado Counties Casualties and Property Pool.

Geoffrey T. Wilson, David W. Broadwell, Denver, for amicus curiae Colorado Municipal League.

Daniel E. Muse, City Atty., City and County of Denver, John M. Eckhardt, Asst. City Atty., Denver, for amicus curiae City and County of Denver.

Charles H. Richardson, City Atty. Julia A. Bannon, Aurora, for amicus curiae City of Aurora.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Voss v. Regional Transportation District*, No. 92CA1206 (Colo.App. July 29, 1993) (not selected for official publication), the court of appeals held that the three-year statute of limitations established by section 13–80–101(1)(j), 6A C.R.S. (1987) (the no-fault limitations statute), for claims arising under the Colorado Automobile Accident Reparations Act (the No–Fault Act), is applicable to a civil action filed by the respondents, Janet F. Voss and Evelyn Stephenson, seeking damages for injuries allegedly sustained in a collision between a car in which they were riding and a bus owned by the petitioner, the Regional Transportation District (the RTD). We granted certiorari to determine whether the no-fault limitations statute or the two-year statute of limitations for actions against governmental and public entities established by section 13–80–102(1)(h), 6A C.R.S. (1987), (the government entity limitations statute), applies to this action.[1] We affirm the court of appeals' judgment.

---

1. In its opinion the court of appeals stated that at trial the RTD argued that § 13–80–102(1)(f), the two-year statute of limitations applicable to actions against governmental entities which have procured insurance, barred the respondents' claims. *Voss,* slip op. at 2. However, the record

## I

On July 12, 1987, an RTD bus crossed the center line of a street while making a left turn and struck a car stopped at a red light. The respondents, who were occupants of the car, were injured by the impact.[2] They filed a civil action against the RTD and others on February 9, 1990.[3]

The complaint alleges, *inter alia*, that the RTD driver was negligent, that such negligence caused the respondents' injuries, and that the no-fault limitations statute governs this case. The RTD asserted that the suit was barred by the government entity limitations statute.[4] The parties filed cross-motions for summary judgment on the issue of the applicable statute of limitations. The trial court held that the no-fault limitations statute applied on the ground that if two statutes of limitations are arguably applicable, the statute providing the longer period of time governs.[5]

The case was tried to a jury in February 1992. At the conclusion of all the evidence, the trial court directed a verdict against the RTD, concluding that the bus driver was negligent as a matter of law and that the RTD must be assumed negligent pursuant to the master-servant doctrine.[6] The jury awarded damages in favor of Voss in the amount of $300,000 and in favor of Stephenson in the amount of $5,000. The trial court reduced Voss's award to $150,000, pursuant to provisions of the Governmental Immunity Act (the Immunity Act) limiting judgment awards against government entities. § 24–10–114(1)(b), 10A C.R.S. (1988). The trial court denied Stephenson's post-trial motion for attorney fees, but ordered the RTD to pay costs in the amount of $1,678 to Stephenson.

The RTD appealed the trial court's judgment, and Stephenson appealed the trial court's denial of her request for attorney fees. The court of appeals affirmed the trial court's conclusion that the no-fault limitations statute applied, reversed the trial court's denial of Stephenson's request for attorney fees, and remanded the case to the trial court for a determination of that issue.[7] In reaching its conclusion with respect to the applicable statute of limitations, the court of appeals relied upon *Jones v. Cox*, 828 P.2d 218 (Colo.1992), and *Reider v. Dawson*, 856 P.2d 31 (Colo.App.1992), *aff'd*, 872 P.2d 212 (Colo.1994).[8]

reflects that at trial the RTD relied solely on the government entity limitations statute, § 13–80–102(1)(h), and that the trial court's judgment was confined to a comparison of that statute with the no-fault limitations statute. Although the RTD's notice of appeal to the court of appeals referred to § 13–80–102(1)(f), its briefs as well as the brief of the respondents were confined to comparisons of the no-fault limitations statute with the government entity limitations statute. In its petition for certiorari the RTD alleged generally that § 13–80–102(1) applied to this case, but the petition and the briefs filed herein by the parties and the amici discuss only whether the no-fault limitations statute or the government entity limitations statute controls this case.

2. Voss was the driver of the car; Stephenson was a passenger therein.

3. Arthur Waldinger and Arthur Waldinger, P.C., were named defendants because in August 1987 Voss and Stephenson retained Waldinger to represent them in this action. Although Waldinger promptly notified the RTD of the respondents' claim pursuant to the requirements of § 24–10–109, 10A C.R.S. (1988), he did not file a complaint within two years from the date of the accident. Respondents alleged alternative counts contending that if their claim against the RTD were barred by the government entity limi-

tations statute, Waldinger committed legal malpractice by not timely filing their complaint.

4. The RTD also claimed that the "sudden emergency" doctrine applied. The sudden emergency doctrine provides that "[a] party suddenly confronted with an emergency due to no negligence on his part is not guilty of negligence for an error of judgment when practically instantaneous action is required." *Cudney v. Moore*, 163 Colo. 30, 32, 428 P.2d 81, 82 (1967). The court found that there was no credible evidence to submit this defense to the jury. This issue has not been appealed.

5. The trial court also dismissed the respondents' legal malpractice claims.

6. The RTD did not appeal this directed verdict.

7. The respondents also conditionally cross-appealed the dismissal of their legal malpractice claims. The court of appeals did not reach the issues raised by the respondents' conditional cross-appeal, and those issues are not before us.

8. At the time it considered this case, the court of appeals did not have the benefit of this court's decision in *Dawson v. Reider*, 872 P.2d 212 (Colo. 1994).

## II

The RTD argues that the court of appeals erred in determining that the no-fault limitations statute is applicable to the respondents' claims. We disagree.

### A

As a preliminary issue, amici, the State of Colorado, Colorado Municipal League, Colorado Inter-governmental Risk Sharing Agency, Colorado Counties Casualty and Property Pool, the City and County of Denver, and the City of Aurora, contend that because the No–Fault Act defines "person" as "every natural person, firm, partnership, association, or corporation," § 10–4–703(10), 4A C.R.S. (1994), the absence of the phrase "governmental entities" from such definition demonstrates an intent by the General Assembly to exclude such entities from the provisions of the No–Fault Act.[9] We disagree.

■ Prior to 1972, governmental entities enjoyed complete immunity from claims arising from their tortious conduct. See generally Evans v. Board of County Comm'rs, 174 Colo. 97, 482 P.2d 968 (1971). In 1972, the doctrine of sovereign immunity was judicially abrogated. In response, the General Assembly enacted the Immunity Act which statute establishes sovereign immunity for many governmental activities and waives such immunity for certain torts. § 24–10–106(1)(a), 10A C.R.S. (1988); see Bertrand v. Board of County Comm'rs, 872 P.2d 223 (Colo.1994). Section 24–10–106(1)(a) of the Immunity Act provides in pertinent part as follows:

**Immunity and partial waiver.** (1) A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section. Sovereign immunity is waived by a public entity in an action for injuries resulting from:

(a) The operation of a motor vehicle, owned or leased by such public entity....

§ 24–10–106(1)(a), 10A C.R.S. (1988). Because the RTD is a public entity, see §§ 32–9–103, 119(1)(a), 13 C.R.S. (1973 & 1994 Supp.), respondents would be prohibited from seeking to recover damages from the RTD in the absence of this statutory waiver of sovereign immunity for actions resulting from the operation of a motor vehicle.

■ Personal injury claims arising from automobile accidents between private parties are subject to the provisions of the No–Fault Act. Jones, 828 P.2d 218. Because the Immunity Act directs that "liability of a public entity shall be determined in the same manner as if the public entity were a private person[,]" § 24–10–107, 10A C.R.S. (1988), claims by private parties against governmental entities arising from automobile accidents are also generally subject to the provisions of the No–Fault Act. In addition, section 10–4–713(2)(b) of the No–Fault Act contains the following pertinent provisions:

[W]here a motor vehicle accident involves a private passenger motor vehicle or a nonprivate passenger motor vehicle and a motor vehicle owned or operated by the regional transportation district ... the insurer of the private passenger vehicle ... shall not have any cause of action or right of reimbursement for any benefits actually paid by such insurer ... against the regional transportation district or against the user or operator of the regional transportation district motor vehicle.

§ 10–4–713(2)(b), 4A C.R.S. (1994). The inclusion of language expressly referring to the RTD in the No–Fault Act supports the conclusion that the General Assembly intended the No–Fault Act to apply to cases in which the RTD is a party.

### B

The RTD argues that the court of appeals failed to consider applicable legislative history or apply established rules of statutory construction in concluding that the no-fault limitations statute governs this case. The RTD further argues that the court of ap-

---

9. The respondents contend that because this argument was not raised by the parties at any time we cannot consider it. However, we must determine whether the no-fault limitations statute governs here. The argument is germane to that determination. See Cherry Hills Farms v. City of Cherry Hills, 670 P.2d 779, 781–82 (Colo.1983).

peals' construction of the statutes of limitations renders the government entity limitations statute a nullity; impermissibly creates an additional implied exception to the government entity limitations statute; and contradicts the principle that a statute of limitations pertaining to classes of defendants is more specific than a statute of limitations pertaining to classes of conduct. We do not agree.

■ The primary task of a court in construing a statute is to give effect to the intent of the General Assembly. *Dawson v. Reider*, 872 P.2d 212, 214 (Colo.1994); *Jones v. Cox*, 828 P.2d 218, 221 (Colo.1992); *Woodsmall v. Regional Transp. Dist.*, 800 P.2d 63, 67 (Colo.1990). Courts must look primarily to the language of the statute and determine the legislative intent by giving effect to the commonly accepted meaning of the words appearing therein. *Jones*, 828 P.2d at 221; *Woodsmall*, 800 P.2d at 67. Only if the "statutory text lends itself to alternative constructions" should a court employ alternate means to determine legislative intent. *Woodsmall*, 800 P.2d at 67; *see Griffin v. S.W. Devanney & Co., Inc.*, 775 P.2d 555, 559 (Colo.1989).

■ The no-fault limitations statute provides in pertinent part as follows:

**General limitation of actions—three years.** (1) The following civil actions, *regardless of the theory upon which suit is brought, or against whom suit is brought,* shall be commenced within three years after the cause of action accrues, and not thereafter:

. . . .

(j) All actions under the "Colorado Auto Accident Reparations Act", part 7 of article 4 of title 10, C.R.S.;

. . . .

§ 13–80–101(1)(j), 6A C.R.S. (1987) (emphasis added). The no-fault limitations statute applies to all actions under the No–Fault Act,

regardless of the identity of the defendant. *See Jones*, 828 P.2d at 222–23.

■ The government entity limitations statute provides in pertinent part as follows:

**General limitation of actions—two years.** (1) The following civil actions, *regardless of the theory upon which suit is brought, or against whom suit is brought,* shall be commenced within two years after the cause of action accrues, and not thereafter:

. . . .

(h) All actions against any public or governmental entity or any employee of a public or governmental entity, except as otherwise provided in this section or section 13–80–103.5;

. . . .

§ 13–80–102(1)(h), 6A C.R.S. (1987) (emphasis added). The government entity limitations statute applies to all actions involving governmental entities, regardless of the theory upon which suit is brought.

The words contained in the no-fault limitations statute and in the government entity limitations statute are not ambiguous. However, both statutes arguably are applicable to the circumstances of this case. In fact, the RTD conceded in arguments to this court that an ambiguity exists with respect to the application of the two statutes.[10]

In *Jones*, we held that the no-fault limitations statute rather than the statute of limitations applicable to tort actions in general established by section 13–80–102(1)(a), 6A C.R.S. (1987), governed a personal injury claim arising from a collision between two privately owned automobiles. *Jones*, 828 P.2d at 223. In *Jones*, we relied upon several rules of statutory construction in seeking to determine the intent of the General Assembly.

In *Dawson*, we considered the application of the no-fault limitations statute to a claim arguably governed by the one-year statute of

---

**10.** The RTD argues that the purpose of the government entity limitations statute was to provide a uniform statute of limitations period with respect to claims brought against a governmental entity. However, the same reasoning is true for the application of the no-fault limitations statute—the General Assembly intended to provide a uniform limitations period for all actions brought under the No–Fault Act. These arguments illustrate the difficulty in determining which of two statutes of limitations is applicable in this case.

limitations established by section 13–80–103, 6A C.R.S. (1987), and held that the no-fault limitations statute applied to a claim arising from a collision between an Eagle County Sheriff's vehicle and a pedestrian. We rejected the argument that the one-year statute of limitations applicable to "all actions against sheriffs" established by section 13–80–103 controlled. *Dawson*, 872 P.2d at 214. In so doing, we stated that, "[a]ssuming that the [respondents] have stated a claim for relief pursuant to the No–Fault Act, both statutes appear to be applicable in this case and the language does not establish which is controlling." *Id.* at 213.

▮▮▮ Our decision in *Dawson* was guided by the following rules of statutory construction we relied upon in *Jones:* (1) a later enacted statute should be applied over an earlier enacted statute; (2) the more specific of two applicable statutes should be applied; and (3) the longer of two applicable statutes should be applied. *Dawson*, 872 P.2d at 214. We also relied upon the legislative history of both statutes of limitations, and the purpose and policy of the No–Fault Act. *Id.* We find our analysis in *Dawson* applicable to the issue here posed.

▮▮▮ The principle that a later enacted statute controls over an earlier enacted statute is not helpful here. Both the no-fault limitations statute and the government entity limitations statute were enacted in 1986, as part of Senate Bill 69. Ch. 114, sec. 1, §§ 13–80–101 to –103, 1986 Colo.Sess.Laws 695, 695–97.

▮▮▮ The rule of specificity is also not dispositive. The RTD asserts that the government entity limitations statute is more specific than the no-fault limitations statute because a statute of limitations based on the status or class of defendant is *"per se"* more specific than a statute of limitations based on conduct. This assertion is not persuasive. The cases relied upon by the RTD in support of this argument recognize that ordinarily a more specific statute should be applied rather than a more general statute if both statutes deal with the same or similar subject matter. *See Persichini v. Brad Ragan, Inc.,* 735 P.2d 168, 172–73 (Colo.1987); *Koch v.*

*Sadler,* 759 P.2d 792, 793 (Colo.App.1988); *Mohawk Green Apartments v. Kramer,* 709 P.2d 955, 957 (Colo.App.1985). However, in *Dawson,* we recognized that in "determining which [of two statutes] is controlling by comparing the two statutes is not possible because one is defined in terms of the type of civil action while the other is defined in terms of the class of defendants." *Dawson,* 872 P.2d at 214. Similarly, in this case the no-fault limitations statute refers to the type of civil action (claims brought under the No–Fault Act), while the government entity limitations statute refers to a class of defendants (governmental entities). In addition, each section is entitled "General limitation of actions," and each section contains the following identical introductory language: "[t]he following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within [two] [three] years after the cause of action accrues, and not thereafter." *Compare* § 13–80–101(1)(j) *with* § 13–80–102(1)(h). Therefore, as in *Dawson,* neither section can be characterized as more specific than the other.

We have recognized that because statutes of limitations are in derogation of a presumptively valid claim, a longer period of limitations should prevail where two statutes are arguably applicable. *Dawson,* 872 P.2d at 214 (citing *Payne v. Ostrus,* 50 F.2d 1039, 1042 (8th Cir.1931) ("Of course if substantial doubt exists, the longer rather than the shorter period of limitation is to be preferred."); *O'Malley v. Sims,* 51 Ariz. 155, 75 P.2d 50, 54–55 (1938) ("We have repeatedly held that while the defense of the statute of limitation is a legitimate one, it is not favored by the courts, and, where two constructions are possible, the one which gives the longer period of limitation is the one to be preferred."); *Jefferson v. Nero,* 225 Ark. 302, 280 S.W.2d 884, 886 (1955) ("If there is doubt as to which of two or more statutes of limitation applies to a particular action or proceeding, and it is necessary to resolve the doubt, it will generally be resolved in favor of the application of the statute containing the longest limitation."); *Thiel v. Taurus Drilling Ltd.,* 218 Mont. 201, 710 P.2d 33, 40 (1985) ("Where there is a substantial question as to

which of two or more statutes of limitations should apply, the general rule is that the doubt should be resolved in favor of the statute containing the longest limitations.")). Application of this rule to the circumstances of this case supports the conclusion that the no-fault limitations statute is applicable.

### C

The RTD contends that the court of appeals failed to harmonize the language of the no-fault limitations statute and the government entity limitations statute and that application of the former statute to this case would render the latter a complete nullity. The RTD further contends that the court of appeals' construction creates an implied exception to the government entity limitations statute, violating the doctrine of *expressio unius est exclusio alterius. See Black's Law Dictionary* 521 (5th ed. 1979) ("Under this maxim, if [a] statute specifies one exception to a general rule ... other exceptions or effects are excluded."). We reject these contentions.

In *Dawson* this court found that the legislative history of sections 13–80–101 and 13–80–103 supported the conclusion that the three-year statute of limitations controlled a tort action commenced pursuant to the No–Fault Act against a sheriff. *Dawson,* 872 P.2d at 215–16. We pointed out that the co-sponsor of Senate Bill 69 indicated that by referring to "section 13–80–103" in identifying exceptions to the government entity limitations statute the drafters intended the former statute to take priority over the latter. *Dawson,* 872 P.2d at 216. We noted that no such exception was contained in the no-fault limitations statute, and concluded that had the General Assembly intended to create an exception to the three-year period established therein for suits filed pursuant to the No–Fault Act, it would have done so. *Id.*

The rationale of *Dawson* controls here. The No–Fault Act contains no provision exempting civil actions filed thereunder against governmental entities from the no-fault limitations statute. To imply such an exception from legislative silence would be inappropriate in view of our decision in *Dawson.* Contrary to the RTD's arguments, such construction does not eviscerate the provisions of the government entity limitations statute or create an implied exception thereto; the latter statute governs actions not arising under the No–Fault Act. A contrary construction, however, would do violence to the broad purposes of the No–Fault Act to "avoid inadequate compensation to victims of automobile accidents" and to "require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or.use of such vehicles and also providing benefits to persons injured in accidents involving such vehicles." § 10–4–702, 4A C.R.S. (1994); *Dawson,* 872 P.2d at 216; *Jones,* 828 P.2d at 222. The No–Fault Act "is to be liberally construed to further its remedial and beneficent purposes...." *Travelers ·Indem. v. Barnes,* 191 Colo. 278, 283, 552 P.2d 300, 304 (1976). In our view, the policies underlying the No–Fault Act support the conclusion that the respondents' claims are among those covered by the no-fault limitations statute. *See Dawson,* 872 P.2d at 216.

### D

Our conclusion that the no-fault limitations statute governs this case is buttressed by what we identified in *Jones* as "notions of fairness." *Jones,* 828 P.2d at 223; *see* § 2–4–201(1)(c), 1B C.R.S. (1980) ("In enacting a statute, it is presumed that ... a just and reasonable result is intended."). In *Jones,* we noted that application of the general two-year statute of limitations "would have the effect of prohibiting an insured ... from filing suit unless she meets the requirements of the [No–Fault Act], while at the same time denying [the insured] the benefits of the Act's special statute of limitation. In light of the legislative purpose of fully compensating the victim, this result seems incongruous and contrary to legislative intent." *Jones,* 828 P.2d at 222. In this case the respondents timely notified the RTD of their injuries and of their intent to commence civil proceedings against it. The RTD thus had ample time to prepare to defend itself. Although the respondents' civil action was filed more than two years after they discovered their injuries, the RTD has not suggested that in this

case it was prejudiced. In our view, the "notions of fairness" referred to in *Jones,* compel a similar result here.

### III

For the foregoing reasons, we affirm the judgment of the court of appeals.

ROVIRA, C.J., dissents, and VOLLACK, J., joins in the dissent.

Chief Justice ROVIRA, dissenting:

We have been asked to decide which statute of limitations applies to a tort action brought against the Regional Transportation District (RTD). The majority holds that the three year limitation period for actions arising under the Colorado Automobile Accident Reparations Act (No Fault Act limitation) applies rather than the two year limitation for actions against governmental entities (Governmental Entity limitation). Maj. op. at 666; *Compare* § 13–80–101(1)(j) *with* § 13–80–102(1)(h), 6A C.R.S. (1987). It concludes that when two conflicting limitation periods arguably apply to an action, the conflict must be resolved in favor of the longer limitation period. Because I believe the majority is continuing to follow an unsound premise in contravention of basic rules of statutory construction and without regard for the policies applicable to governmental entities, I dissent.

### I.

The majority relies on two principal cases to support its holding, *Jones v. Cox,* 828 P.2d 218 (Colo.1992) and *Dawson v. Reider,* 872 P.2d 212 (Colo.1994). Indeed, the majority explains that the "analysis in *Dawson* [is] applicable to the issue here posed." Maj. op. at 668. The majority's rationale here contains many of the same errors I first identified in my dissent in *Dawson.*

As I stated in *Dawson,* the *Jones* holding was not premised on the principle of statutory construction that the longer statute of limitations should prevail when two statutes conflict. *Dawson,* 872 P.2d at 218 (Rovira, C.J., dissenting). Rather, in *Jones,* the court held that actions arising under the No Fault Act comprise a more specific class of actions than do tort claims generally.[1] In *Jones,* once the court had answered the preliminary question of whether the No Fault Act covered an action between two motorists, it could readily identify the more general and specific statute. *See Jones,* 828 P.2d at 223.

In *Dawson* the court attempted to build on *Jones,* but was without identifiable general and specific statutes. Absent this guideline, it resorted to the conclusion that the length of the statutory period is dispositive. Here, the majority once again concedes that two of the three principles of statutory construction relied on in *Jones* are not present.[2] Maj. op. at 668. Thus, while the court purports to rely on *Jones,* in reality that case provides little support for the majority's decision.

### II.

### A.

The majority's reliance on the proposition that the longer statute must prevail because statutes of limitation preclude presumptively valid claims is defective in three respects. First, the majority ignores the rule that statutes of limitations governing actions against governmental entities must be strictly construed. In so doing it ignores the policies clearly set forth in the Governmental Immunity Act (GIA). Second, it ignores the modern trend to view statutes of limitation favorably. Finally, the majority's interpretation

---

1. I dissented in *Jones* because I believed the action there did not meet the threshold requirement of arising "under" the No Fault Act. In my view no conflict between two statutes existed because only one statute related to the claims. As such, there was no need to reconcile potentially conflicting limitation periods. *Jones,* 828 P.2d at 226–27 (1992) (Rovira, J., dissenting).

2. The majority states that neither of the limitation periods were enacted earlier in time, nor does one statute apply to a more specific type of action. I expressed this view in my dissent in *Dawson* where I explained specificity was not dispositive because a statute defined by class of defendants is at once more specific and more general than a limitations period that applies to a specific class of claims. *Dawson,* 872 P.2d at 218 n. 1 (Rovira, C.J., dissenting).

fails to harmonize these potentially conflicting statutes, leaving the two year limitation period without meaning.

I agree that the provisions of the No Fault Act apply to RTD as a public entity. Maj. op. at 666. That the substantive provisions of the No Fault Act apply is not, however, determinative of the procedural aspect of the applicable statute of limitations. Any limitation period providing for ·claims against the government must be strictly construed. *See Dawson*, 872 P.2d at 219 (Rovira, C.J., dissenting). This rule finds strong support in the policies underlying exceptions to governmental immunity. When it enacted the GIA, the General Assembly recognized that "taxpayers would ultimately bear the fiscal burdens of unlimited liability and that limitations on the liability of public entities and public employees are necessary in order to protect the taxpayers against excessive fiscal burdens." § 24–10–102, 10A C.R.S. (1988). Further, the importance of timely claims is evidenced in the statutory scheme where notice of any claim must be provided within one hundred and eighty days of discovery of the injury. § 24–10–109, 10A C.R.S. (1994 Supp.). While the notice provisions ensure that dangerous conditions are immediately abated, they also foster prompt settlement of claims, *see Antonopoulos v. Telluride*, 187 Colo. 392, 532 P.2d 346 (1975), and allow the public entity to make "adequate financial arrangements to meet any potential liability." *Woodsmall v. RTD*, 800 P.2d 63, 68 (Colo. 1990). Thus, the importance of ensuring against stale claims against the government presents a countervailing legislative policy which must be weighed against the No Fault Act's policy of full compensation.[3]

B.

Further, as pointed out in my dissent in *Dawson*, limitation periods are viewed favorably in Colorado. *Dawson*, 872 P.2d at 218–19 (Rovira, C.J., dissenting) (citing *Oberst v. Mays*, 148 Colo. 285, 365 P.2d 902 (1961); *Chuchuru v. Chutchurru*, 185 F.2d 62, 64 (10th Cir.1950)). The cases relied upon by the majority to support the contention that the longer period applies all originate outside of Colorado, and reflect an archaic view toward limitations periods. The majority bases its conclusion on the fact that statutes of limitation bar presumptively valid claims. However, the GIA provides that there are no presumptively valid claims against any Colorado governmental entity, except those allowed by statute. *See* § 24–1–108 ("Except as provided in § 24–10–104 to 24–10–106, sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort."). Such statutorily created exceptions cannot be viewed as presumptively valid claims.

C.

Finally, the majority holds that application of the longer period of limitations would not eviscerate the two year limitation period for actions against governmental entities. I disagree. Statutes are to be read in harmony to avoid a construction that would render meaningless one or more such parts. *People v. Terry*, 791 P.2d 374, 376 (Colo.1990). The majority points out the limitations statutes contain identical introductory language.[4] Maj. op. at 668. Indeed, the one, two and three year limitations periods all contain identical introductory language. Because limitations periods are defined for every category of claim that can be brought against a

---

3. While the policy of the No Fault Act to ensure maximum compensation requires consideration, the policies underlying sovereign immunity are equally compelling. Moreover, I do not find persuasive the majority's concern that a two year statute of limitations, under these limited circumstances, would do violence to the No Fault Act. Maj. op. at 666.

4.. The sections were enacted simultaneously when the General Assembly repealed and reenacted the entire limitations scheme in 1986. *See* Ch. 114, sec. 1, §§ 13–80–101 to –118, 55th

Gen.Ass., 2nd Sess., 1986 Colo.Sess.Laws 695. Section 101, containing the No Fault Act limitation is entitled General limitation of action— three years, and section 102, containing the Governmental Entity limitation is entitled General limitation of actions—two years. Both begin as follows:

The following civil actions, regardless of the theory upon which suit is brought, or against whom the suit is brought, shall be commenced within [three or two] years after the cause of action accrues, and not thereafter.

governmental entity, and we have already explained the difficulty in determining specificity based on type of claim or identity of defendant, under the majority view the two year Governmental Entity limitations period becomes virtually meaningless. That several of the actions that may arise against a governmental entity are subject to a similar two year limitation period is merely fortuitous, and does not restore meaning to the Governmental Entity limitation period.

The majority states that its interpretation is supported by the fact that the No Fault Act limitation contains no exception for the Governmental Entity limitation. Maj. op. at 669. Once again, I fail to understand the majority's exclusionary argument. *See Dawson*, 872 P.2d at 221 (Rovira, C.J., dissenting). The majority's analysis is equally persuasive to draw the opposite conclusion because the Governmental Entity limitation contains enumerated exceptions, none of which relate to the No Fault Act. *See* § 13–80–102(1)(h) (providing for a two year limitations period "except as otherwise provided in this section or section § 13–80–103"). In effect, the majority creates an additional exemption in the Governmental Entity limitation to provide for the No Fault Act limitation when such an exception was not intended.

### III.

Finally, the "notions of fairness" contained in *Jones* does not suggest the longer statutory period should apply. While in *Dawson* the majority was influenced by the General Assembly's rejection of a one year limitations period as too short to bring a claim, here, the two year period provides ample time for such a claim. *See Dawson*, 872 P.2d at 215 (explaining the only unanimous conclusion of the Special Task Force on Tort Liability and Insurance was "that a one-year interval is too short and a four year interval too long,...."). Indeed, we recently upheld the constitutionality of a two year limitations period based on our view that the statute properly "promote[d] justice, discourage[d] unnecessary delay, and forestall[ed] the prosecution of stale claims." *See Dove v. Delgado*, 808 P.2d 1270, 1274 (Colo.1991).

Here, the respondents properly notified the RTD of their potential claims as required under the GIA. While such notice provided the RTD with ample time to prepare for the action, the intervening two year period also provided the respondents a "fundamentally fair" period in which to file their claim.

Because the majority continues to adhere to an outdated view of limitations periods without giving consideration to competing policies underlying the GIA or basic principles of statutory construction, I dissent.

I am authorized to say that Justice VOLLACK joins in this dissent.